Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone: (615) 726-5422
Facsimile: (615) 726-5417
rbusch@kingballow.com

Elliot Schnapp (ES 9170)
GORDON, GORDON & SCHNAPP, P.C.
30 Broad Street 21st Floor
New York, New York 10004
Telephone: (212) 355-3200
Facsimile: (212) 355-3292

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SEAN CAREY, and BEAU GOLDEN**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**EDWARD CHRISTOPHER SHEERAN P/K/A ED SHEERAN, JOHN "JOHNNY" MCDAID, STEVE MCCUTCHEON P/K/A STEVE MAC, AMY VICTORIA WADGE, SONY MUSIC ENTERTAINMENT, KOBALT MUSIC SERVICES AMERICA, INC., BUCKS MUSIC GROUP LIMITED, MCGRAW MUSIC, LLC, SAMUEL TIMOTHY MCGRAW P/K/A TIM MCGRAW, AUDREY FAITH HILL P/K/A FAITH HILL, SONY/ATV SONGS, LLC, ROKSTONE MUSIC LTD., UNIVERSAL POLYGRAM INTERNATIONAL PUBLISHING, INC., COOKIE JAR MUSIC LLP, WB MUSIC CORP.**<br><br>    **Defendants.** | **Case No.**<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

1

## COMPLAINT

## NATURE OF THE ACTION

1.      This is an action for willful copyright infringement brought by plaintiffs Sean Carey and Beau Golden (collectively "Plaintiffs") against Edward Christopher Sheeran p/k/a Ed Sheeran, John "Johnny" McDaid, Steve McCutcheon, p/k/a Steve Mac, and Amy Victoria Wadge (collectively "Defendant Writers"); Sony/ATV Songs, LLC, Rokstone Music Ltd., Universal Polygram International Publishing, Inc., Cookie Jar Music LLP, WB Music Corp., Kobalt Music Services America, Inc., and Bucks Music Group Limited (collectively "Defendant Publishers/Administrators"); Samuel Timothy McGraw p/k/a Tim McGraw, Audrey Faith Hill p/k/a Faith Hill, Sony Music Entertainment, and McGraw Music, LLC (all Defendants are at times collectively referred to as "Defendants") for the blatant copying of Plaintiffs' song "When I Found You" ("When I Found You," or the "Song") in the song "The Rest Of Our Life" ("The Rest Of Our Life" or the "Infringing Song" or the "Infringing Sound Recording") and for the subsequent exploitation and distribution of the Infringing Song and Infringing Sound Recording in violation of Plaintiffs' rights.  The Infringing Song/Sound Recording is the title track of the Number 1 country music album of the same name.  The copying is, in many instances, verbatim, note-for-note copying of important and original elements of the Song, and is obvious to the ordinary observer.  Furthermore, as discussed fully below, the copying was fully known by employees of Sony Music Entertainment to have occurred, but Sony Music Entertainment did not alert Plaintiffs or take any steps to prevent it.  Indeed, as discussed below, it very well may have been an agent of Sony Music Entertainment who provided the other defendants herein with access to the Song.

## THE PARTIES

2.      Plaintiff Sean Carey ("Carey"), an individual, is a co-owner of the musical composition "When I Found You" which is duly registered with the United States Copyright Office as PA002068570.  Carey is a resident of Sydney, Australia.  Carey is a Record Producer and Engineer who has produced hundreds of records over the last ten years.  Carey is an ex-guitarist from multi-platinum accredited band "Thirsty Merc," which achieved ARIA Gold and Platinum Sales Awards and received 5 ARIA award nominations.

3.      Plaintiff Beau Golden ("Golden"), an individual, is a co-owner of the musical composition "When I Found You" which is duly registered with the United States Copyright Office as PA002068570.  Golden is a resident of Sydney, Australia and is one of Australia's most in-demand keyboard players, musical directors, and songwriters.

4.      Defendant Edward Christopher Sheeran p/k/a Ed Sheeran ("Sheeran"), an individual, is a co-writer of the Infringing Song "The Rest Of Our Life."  Sheeran is a resident of Suffolk, England, but upon information and belief spends a substantial amount of time in this Judicial District.  His company, GingerBread Man Records, is a label affiliated with Asylum Records UK/Atlantic Records.  Atlantic Records is a Delaware corporation with its principal place of business in New York.  Sheeran's compositions are published by Sony/ATV Music Publishing, LTD UK, which is headquartered in the United Kingdom but regularly does business in New York through its affiliate Sony/ATV Songs, LLC ("Sony/ATV").  Sony/ATV is headquartered in New York at 25 Madison Ave, 24th Floor, New York, NY 10010 and is incorporated in Delaware.  Upon information and belief, Sheeran conducts systematic and continuous business in this Judicial District, and has generated substantial revenue from the exploitation of the Infringing Song in New York.  Sheeran is signed to the New York based U.S.

3

Performing Rights Organization BMI, which, upon information and belief, directs its actions on Sheeran's behalf in this Judicial District, and has licensed the Infringing Song, among others, for public performances in New York.  BMI collects public performance royalties on Sheeran's behalf in this Judicial District, including royalties with respect to the Infringing Song.  Upon information and belief, Sheeran has entered into agreements with Sony/ATV to exploit his interest in the Infringing Song, including issuing licenses and collecting royalties from the Infringing Song's exploitation.  Upon information and belief, Sony/ATV has specifically directed its actions on behalf of Mr. Sheeran in this Judicial District through the issuing of licenses and the collection of royalties.  Upon information and belief, the aforementioned entities all act as agents for Sheeran in this Judicial District, and Sheeran retains authorization and/or approval rights with respect to the Infringing Song.  Upon information and belief, Sheeran has exercised his authorization and/or approval rights with respect to specific exploitations of the Infringing Song in New York.

5.     Defendant John "Johnny" McDaid ("McDaid"), an individual, is a co-writer of the Infringing Song "The Rest Of Our Life".  McDaid is a songwriter who has entered into an administration agreement with New York based Kobalt Music Services America, Inc. ("Kobalt"), with offices at Gansevoort St. 6th Floor New York, NY 10014.  Kobalt administers McDaid's compositions, including the Infringing Song on his behalf in this Judicial District. McDaid is also affiliated with the publisher, Spirit Music Group, which is headquartered at 235 West 23rd Street 5th Floor New York, NY 10011.  Upon information and belief, McDaid is a resident of Derry, Northern Ireland, but upon information and belief spends a substantial amount of time in this Judicial District.  McDaid is a registered writer with BMI, a New York Corporation with its headquarters in New York.  Through that affiliation, BMI controls 47.52%

of the Infringing Song for public performances, licenses the Infringing Song on McDaid's behalf in this Judicial District, and collects public performance royalties on his behalf in this Judicial District, including royalties with respect to the Infringing Song.  Upon information and belief, McDaid conducts systematic and continuous business in this Judicial District, and has generated substantial revenue from the exploitation of the Infringing Song in New York.  Upon information and belief, and through its agreement with McDaid, Kobalt has exploited McDaid's interest in the Infringing Song, including issuing licenses and collecting royalties from the Infringing Song's exploitation.  Upon information and belief, Kobalt has specifically directed its actions on behalf of McDaid in this Judicial District through the issuing of such licenses and the collection of royalties.  Upon information and belief, Kobalt's standard administration agreements, and specifically McDaid's administration agreement with Kobalt, provides McDaid authorization and/or approval rights over specific exploitations of the Infringing Song.  Upon information and belief, McDaid has exercised his authorization and/or approval rights with respect to specific exploitation(s) of the Infringing Song in this Judicial District.  Upon information and belief, McDaid has authorized and/or approved licenses in New York or with New York companies for the exploitation of the Infringing Song.  The aforementioned entities all act as agents for McDaid in this Judicial District.

6.      Defendant Steven McCutcheon p/k/a Steve Mac ("Mac"), an individual, is a co-writer of the Infringing Song "The Rest Of Our Life."  Upon information and belief, Mac is a resident of Surrey, United Kingdom.   Mac's work is published by Rokstone Music Ltd. ("Rokstone") Rokstone Music Ltd. is headquartered in the UK at Begbies, 9 Bonhill Street, London, EC2A 4DJ.  Upon information and belief, Mac conducts systematic and continuous business in this Judicial District, and has generated substantial revenue from the exploitation of

the Infringing Song in New York.  Upon information and belief, Mac is signed with the New York headquartered Performing Rights Organization ASCAP, which, upon information and belief, directs its actions on Mac's behalf in New York, collects public performance royalties on his behalf in this Judicial District, and thereby serves as his agent in this Judicial District, all with respect to the Infringing Song, among other of his musical compositions.  Upon information and belief, Mac has entered into agreements with Rokstone to exploit his interest in the Infringing Song and upon information and belief, Rokstone has specifically directed its actions on behalf of Mac in this Judicial District.

7.      Defendant Amy Victoria Wadge ("Wadge"), an individual, is a co-writer of the Infringing Song "The Rest Of Our Life."  Wadge is a resident of Backwell, Somerset, United Kingdom.  Wadge's work is published by BDi Music Limited, which is headquartered in the UK and is located at Roundhouse 212 Regents Park Road, London NW1 8AW.  Wadge's work is also published by Bucks Music Group Limited ("Bucks Music"), which is headquartered in the UK and is located at Roundhouse 212 Regents Park Road Entrance, London, NW1 8AW.  Bucks Music has an international office in this Judicial District which, upon information and belief, exploits the Infringing Song on behalf of Wadge in this Judicial District.  Wadge is additionally affiliated with Cookie Jar Music, LLP ("Cookie Jar"), which has a principal place of business located at 5th Floor, 89 New Bond Street, London, W1S 1DA.  Upon information and belief, Cookie Jar is affiliated with WB Music Corp., which, upon information and belief, exploits the Infringing Song in the United States, including in New York.  Upon information and belief, Wadge conducts systematic and continuous business in this Judicial District, and has generated substantial revenue from the exploitation of the Infringing Song in New York.  Upon information and belief, Wadge is also signed with the New York based Performing Rights Organization

ASCAP, which, upon information and belief, directs its actions on Wadge's behalf in this Judicial District, and collects performance royalties on Wadge's behalf in this Judicial District, all with respect to the Infringing Song, among other of her works.  Upon information and belief, both Bucks Music and ASCAP serve as Wadge's agent in this Judicial District.

8.      Defendant Sony Music Entertainment ("Sony Music") is a Delaware General Partnership with its principal place of business at 550 Madison Avenue, New York, NY  10022. Upon information and belief, Sony Music released, manufactured, distributed, and is the exclusive licensee of the sound recording embodying the Infringing Song.  The Infringing Song was released through Arista Nashville, which is a record label wholly owned by Sony Music Nashville, the country branch of Sony Music.  Upon information and belief, Sony Music has distributed the Infringing Song in both the United States, including specifically in New York, and throughout the world, either directly or through its affiliates.

9.      Defendant Samuel Timothy McGraw p/k/a Tim McGraw ("McGraw") is a Grammy Award winning, multi-platinum country music superstar, and is the sole owner of McGraw Music, which, upon information and belief, is the owner of the Infringing Sound Recording.  McGraw is a performer of the song "The Rest of Our Life," a duet with wife Audrey Faith Hill.  Upon information and belief, McGraw is a resident of the state of Tennessee.  Upon information and belief, McGraw regularly conducts business in this Judicial District, and recently performed the Infringing Song in a performance in New York City.  McGraw has performed the Infringing Song in other locations and for live broadcast on network television which was distributed nationwide, including in New York.  Upon information and belief, McGraw generates substantial revenues from the exploitation and distribution of the Infringing Song throughout the world, including in New York.  Upon information and belief, McGraw's

upcoming world tour, which will feature performances in New York, will include performances of the Infringing Song.

10.     Defendant Audrey Faith Hill p/k/a Faith Hill ("Hill") is a Grammy Award winning, multi-platinum country music superstar.  Hill is a performer of the song "The Rest Of Our Life," a duet with husband McGraw.  Upon information and belief, Hill is a resident of the state of Tennessee.  Upon information and belief, Hill regularly conducts business in this Judicial District, and recently performed the Infringing Song in a performance in New York City.  Hill has performed the Infringing Song in other locations and for live broadcast on network television which was distributed nationwide, including in New York.  Upon information and belief, Hill generates substantial revenues from the exploitation and distribution of the Infringing Song throughout the world, including in New York.  Upon information and belief, Hill's upcoming world tour, which will feature performances in New York, will include performances of the Infringing Song.

11.     Defendant McGraw Music, LLC, ("McGraw Music") is a Tennessee limited liability company with its principal place of business located at 3310 West End Avenue, Suite 400, Nashville, TN  37203.  Upon information and belief, McGraw Music is the legal owner of the Infringing Sound Recording, which has been distributed in New York and throughout the United States.  Upon information and belief, McGraw Music issued an exclusive license of the Infringing Sound Recording to Sony Music, which specifically allowed and contemplated Sony Music to distribute the Infringing Sound Recording in this Judicial District and elsewhere.

12.     Defendant Sony/ATV Songs LLC ("Sony/ATV") is a Delaware corporation with its principal place of business at 550 Madison Avenue, New York, NY 10022.  Upon information and belief, Sony/ATV serves as a music publisher of the Infringing Song.  Upon information and

belief, Sony/ATV has exploited and distributed the Infringing Song.  Sony/ATV is responsible for coordinating, among other things, the marketing, promotion, and sale and license of the musical composition "The Rest of Our Life" in the United States.  Upon further information and belief, Sony/ATV entered into contracts which caused widespread exploitation of the Infringing Song in the United States, including licenses for exploitation of "The Rest Of Our Life" in New York.  Upon further information and belief, Sony/ATV can be served via its registered agent The Prentice-Hall Corporation System, Inc. at 2711 Centerville Road Suite 400, Wilmington, DE 19808.  Upon information and belief, Sony/ATV conducts systematic and continuous business in this Judicial District, including operating an office in this Judicial District, and has generated substantial revenue from the exploitation of "The Rest Of Our Life" in New York.

13.    Defendant Kobalt Music Services America, Inc. ("Kobalt") is a Delaware corporation with a principle place of business at 2 Gansevoort St. 6th Floor, New York, NY 10014.  Upon information and belief, Kobalt is the administrator of McDaid's share of the Infringing Song.  Upon information and belief, Kobalt conducts systematic and continuous business in this Judicial District, including operating an office in this Judicial District, and has generated substantial revenue from the exploitation of "The Rest Of Our Life" in New York. Upon information and belief, Kobalt has an agreement with Defendant McDaid to exploit his interest in the Infringing Song in the United States, including issuing licenses for exploitation of "The Rest Of Our Life" in New York.  Upon information and belief, the standard terms of Kobalt's administration agreements refer to Kobalt as an "agent."  Upon information and belief, the standard terms of Kobalt's administration agreements require that Kobalt obtain written consent from the principal for certain types of licenses.  Upon information and belief, the standard terms of Kobalt's administration agreements provide that Kobalt's principals retain the

control to authorize and/or approve certain types of licenses. Upon information and belief, McDaid's administration agreement with Kobalt provides McDaid authorization and/or approval rights over specific exploitations of the Infringing Song. Upon information and belief, McDaid has exercised his authorization and/or approval rights with respect to specific exploitation(s) of the Infringing Song in this Judicial District. Upon information and belief, McDaid has authorized and/or approved licenses in New York or with New York companies for the exploitation of the Infringing Song. Upon information and belief, defendant Kobalt, and affiliated Kobalt entities around the world, operate as a single entity, including through the sharing of employees, resources, and all other business activities.

14. Defendant Bucks Music Group Limited ("Bucks Music") is headquartered in the United Kingdom and is located at Roundhouse 212 Regents Park Road Entrance, London, NW1 8AW. Bucks Music has an international office in New York. Upon information and belief, Bucks Music conducts systematic and continuous business in this Judicial District, including operating an office in this Judicial District, and has generated substantial revenue from the exploitation of "The Rest Of Our Life" in New York with respect to the Infringing Song. Upon information and belief, Bucks Music has an agreement with Defendant Wadge to exploit her interest in the Infringing Song in the United States, including issuing licenses for exploitation of "The Rest Of Our Life" in New York.

15. Defendant Rokstone Music Ltd. ("Rokstone") is a U.K. company headquartered at Begbies, 9 Bonhill Street, London, EC2A 4DJ. Upon information and belief, Rokstone serves as a music publisher of the Infringing Song for Defendant Mac's share of the Infringing Song and is affiliated with Universal Polygram International Publishing, Inc., ("Universal") which administers Rokstone's interests in the United States. Upon information and belief, Rokstone,

through its affiliation with Universal, conducts systematic and continuous business in this Judicial District and has generated substantial revenue from the exploitation of "The Rest Of Our Life" in New York with respect to the Infringing Song.

16.     Defendant Universal Polygram International Publishing Inc. ("Universal") is a Delaware corporation with its principal place of business 2100 Colorado Avenue, Santa Monica, CA 90404.  Upon information and belief, Universal conducts systematic and continuous business in this Judicial District and has generated substantial revenue from the exploitation of "The Rest Of Our Life" in New York.  Upon information and belief, Universal has an agreement with Rokstone to exploit Defendant Mac's interest in the Infringing Song in the United States, including in New York.

17.     Defendant Cookie Jar Music LLP ("Cookie Jar") is a U.K. company with its principal place of business located at 5th Floor, 89 New Bond Street, London, W1S 1DA.  Upon information and belief, Cookie Jar serves as a music publisher for Defendant Wadge's share of the Infringing Song and is affiliated with WB Music Corp., which administers Cookie Jar's interests in the United States.  Upon information and belief, Cookie Jar, through its affiliation with WB Music Corp., conducts systematic and continuous business in this Judicial District, including with respect to the Infringing Song, and has generated substantial revenue from the exploitation of "The Rest Of Our Life" in New York.

18.     Defendant WB Music Corp. ("WB Music") is a California corporation with its principal place of business at 10585 Santa Monica Blvd., Los Angeles, CA 90025.  Upon information and belief, WB Music conducts systematic and continuous business in this Judicial District, including operating an office in this Judicial District, and has generated substantial revenue from the exploitation of "The Rest Of Our Life" in New York.  Upon information and

belief, WB Music has an agreement with Cookie Jar to exploit Defendant Wadge's interest in the Infringing Song in the United States, including in New York.

## JURISDICTION AND VENUE

19.     The jurisdiction of this Court with respect to the copyright infringement claims is based upon 28 U.S.C. §§ 1331 and 1338(a) in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 et seq.), which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

20.     This Court has general personal jurisdiction over any individual Defendants which reside in or may be considered at home in New York, and any of the corporate Defendants that have a principle place of business or that are incorporated in New York, as discussed more fully herein.

21.     This Court has specific personal jurisdiction over Defendants given the systematic and continuous business contacts of both corporate and individual Defendants in New York with respect to the Infringing Song and Infringing Sound Recording (discussed above in the party section and further below), which, collectively, prove purposeful availment to New York.

22.     Plaintiffs' claims implicate widespread, pervasive infringement of a copyright owned by Plaintiffs.  Among other things, and as explained more fully below:

23.     Defendants offered the Infringing Song for sale in New York and/or authorized the same.

24.     Defendants advertised the Infringing Song to New York residents.

25.     Defendants benefited substantially from the sale of a substantial number of copies of the Infringing Song in New York.

26.     Defendants licensed and/or authorized the licensing of the Infringing Song with New York companies and for exploitation in New York.

27.     A substantial number of purchasers of the Infringing Song are New York residents.

28.     Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with New York residents.

29.     A coordinated plan existed among all Defendants to distribute the Infringing Song and Infringing Sound Recording throughout the United States, including New York and this Judicial District.

30.     Defendants actively participated in and/or authorized the unauthorized and unlawful manufacture of the Infringing Song and Infringing Sound Recording in this Judicial District.

31.     Defendants actively participated in the unauthorized and unlawful distribution of the Infringing Song to New York residents and in this Judicial District.

32.     Defendants have generated, and will generate touring revenues from the unauthorized and unlawful exploitation of the Infringing Song, including receiving substantial revenue from such exploitation in New York and this Judicial District.

33.     Defendants Hill and McGraw have publicly performed the Infringing Song in New York.

34.     Defendants, individually and collectively, have generated substantial revenue from the exploitation of the Infringing Song in New York and in this Judicial District.

35.    Defendants have knowingly and willfully exploited the Infringing Song and Infringing Sound Recording in New York, and the harm resulting from such infringement was knowingly directed at Plaintiffs.

36.    Defendants have licensed, or authorized their agents to license, the Infringing Song and Infringing Sound Recording with New York companies and for exploitation in New York

37.    The Defendants facilitated the infringing acts occurring in the United States, and actively participated in a scheme aiding, inducing, and contributing to copyright infringement in the United States and in this Judicial District.  Furthermore, as discussed fully above in the Parties Section, many of the Defendants have also entered into agreements with New York companies, or companies that have a significant presence in New York, and this Judicial District, to act as their agents, with the intention that such contracts will be performed in New York with respect to the Infringing Song and Infringing Sound Recording.

38.    For those Defendants primarily based out of the U.K., given their willful and knowing exploitations of the Infringing Song in New York, and their retention of agents in this Judicial District with respect to the Infringing Song, each could certainly reasonably anticipate being haled into a court in the United States, and New York specifically.  Thus, jurisdiction could also be exercised constitutionally in this Court pursuant to Rule 4(k)(2).

39.    Discovery will reveal other facts establishing the jurisdiction of this Court in this action.

40.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

## FACTUAL ALLEGATIONS

41.     "When I Found You" (the "Song") was written in 2014 by Australian songwriters Carey, Golden, and Jasmine Rae Eldridge p/k/a Jasmine Rae.  Each have a long history in the music industry as writers, producers, and/or performers including holding record deals with major labels and music direction positions with Netflix.  All three writers have maintained excellent professional relationships and communication since the Song's creation.

42.     A sound recording of the Song embodying the vocal performance of Jasmine Rae was released on ABC Records in 2015.  The Song was a success and reached Number 1 on The Music Network's 2016 Australian Country Chart and was the most played Australian country song on the radio in 2016.  To date, the Song has received over 150,000 streams on Spotify and 58,000 views on YouTube.

43.     Upon information and belief, the Infringing Song was written in 2017 by the Defendant Writers.  Subsequently, the Infringing Sound Recording was recorded in parts at Blackbird Studio D, Nashville, Tennessee; Capitol Studios, Hollywood, California; Ocean Way Studio A, Nashville, Tennessee; and The Metal Building, Nashville, Tennessee.  The Infringing Sound Recording featured Defendants McGraw and Hill and was released by Sony Music's Arista Nashville label, under an exclusive license from McGraw Music, as a single on October 5, 2017 and on a full length album entitled "The Rest Of Our Life" on November 17, 2017.

### DISCOVERY OF THE INFRINGING SONG/SOUND RECORDING
### AND ACCESS TO THE SONG

44.     On December 13, 2017, Jasmine Rae and Mr. Golden came to Mr. Carey's studio so the three could write new music together.  During the writing session, Ms. Rae mentioned to Mr. Carey and Mr. Golden that a fan had tweeted her asking if she had heard the new Tim

McGraw and Faith Hill song because it "sounds remarkably like 'When I Found You.'"  Ms. Rae indicated that the songs sounded similar.

45.     During this same conversation, Ms. Rae suggested making a video pointing out the similarities between "When I Found You" and the Infringing Song that could be posted to Facebook in order to gain additional exposure for "When I Found You".  Ms. Rae's comments about the similarities between "When I Found You" and "The Rest Of Our Life" piqued Plaintiffs' curiosity, so Mr. Carey and Mr. Golden decided to listen to the Infringing Sound Recording.  From the very first notes, it was immediately apparent to Mr. Carey and Mr. Golden that the similarities between the two works were far more than coincidental.  In fact, it was clear that "The Rest Of Our Life" was almost a note for note copy of "When I Found You."

46.     Mr. Carey and Mr. Golden pointed out these obvious similarities to Ms. Rae and raised concerns that this was a case of copyright infringement.  Ms. Rae agreed with Plaintiffs' analysis and it was decided that actions should be taken to protect their collective rights.  At no point did Plaintiffs or Ms. Rae grant any Defendants a license for use of "When I Found You" in the Infringing Song or Infringing Sound Recording, whether express or implied.

47.     Plaintiffs and Ms. Rae decided to consult legal counsel to determine the best way to protect their interests.  Shortly thereafter, Ms. Rae stated that she wanted to involve her boyfriend, Tim Holland, in the process of talking to potential legal counsel.  Mr. Holland is a marketing manager for Sony Music Entertainment.  On a conference call between Plaintiffs, Mr. Holland, and Ms. Rae, Mr. Holland disclosed that he was aware of the Infringing Song and had played it for a co-worker at Sony Music who also noted the striking similarities between the Infringing Song and Plaintiffs' Song.  Mr. Holland also disclosed that he knew there were four writers of the Infringing Song, including Defendant Sheeran.

16

48.     Shocked by these revelations regarding the theft of their work, Plaintiffs increased their efforts to identify and retain legal counsel.  Shortly thereafter, on December 19, 2017, Plaintiffs met with Ms. Rae to discuss a plan for moving forward with this action.  During this meeting, Ms. Rae raised concerns about bringing any action for infringement out of fear that Mr. Holland would face repercussions from Sony Music due to his relationship with a plaintiff in an action naming his employer as a defendant.  Despite these reservations, Ms. Rae and Plaintiffs agreed to move forward because protecting their creative work was of the utmost importance.  It was decided that Mr. Carey would draft a letter to counsel indicating that all three writers were prepared to move forward with an action for infringement of their work.  Ms. Rae's only caveat was that she be allowed to speak to Mr. Holland prior to the letter being sent.

49.     The next morning, December 20, 2017, Ms. Rae sent an email requesting that all three writers of the Song meet with Mr. Holland to discuss the implications of moving forward with any legal action.  Plaintiffs indicated that such a meeting could cause problems for Mr. Holland because it could appear to Sony Music that he was assisting in bringing a legal action against his employer.  Plaintiffs were concerned that Mr. Holland could face retribution for his participation in or knowledge of their suit, and wanted to avoid putting him in a compromised position.  Ms. Rae indicated that Mr. Holland was already concerned about losing his job, but wanted to meet anyway.

50.     Plaintiffs met in person with Ms. Rae and Mr. Holland on December 21, 2017.  During this conversation, Mr. Holland admitted to knowing about the Infringing Song months in advance of its release because he was tasked with promoting and marketing the Infringing Song and Infringing Sound Recording before its release.  When questioned by Plaintiffs as to his silence about the similarities between "When I Found You" and the Infringing Song/Infringing

Sound Recording, Mr. Holland stated he did not want to lose his job with Sony Music.  Mr. Holland also stated that he frequently works with Sony Music Nashville and that he directly communicates with their offices as part of his job.  When pressed further by Plaintiffs, Mr. Holland indicated that he had known that the songs were substantially similar for more than two months prior to the October 5, 2017 release date of the Infringing Song/Infringing Sound Recording.

51.     Plaintiffs became suspicious that not only was Mr. Holland aware of the copying of "When I Found You" by the Defendant Writers far in advance of the Infringing Song/Sound Recordings' release, but also that he was instrumental in bringing Plaintiffs' work to the attention of the Defendants and likely provided access to it.  Indeed, it strains credibility to believe that it is just a coincidence that the Infringing Song/Infringing Sound Recording, a blatant note for note copy of the Song, was created without Mr. Holland's providing access, when Mr. Holland is the boyfriend of one of the writers of the Song.  In support of this position, Plaintiffs allege, upon information and belief, that Mr. Holland presented Plaintiffs' song to Sony Music in an effort to gain exposure for Ms. Rae and promote her work.  Upon further information and belief, Plaintiffs assert that the Song was then made available to the Defendant Writers by others affiliated with Sony Music.

52.     Even ignoring Mr. Holland's actions, which reasonably give support to the belief that Mr. Holland provided access to the Song to some or all of the Defendants, there is substantial evidence that the Defendant Writers had access to "When I Found You" that is more than sufficient to support finding the Defendant Writers copied Plaintiffs' song.  Specifically, Defendant Sheeran has substantial connections to Australia where "When I Found You" was, as set forth above, a chart topping hit, especially during the year 2016, that received mass airplay in

the country.  In fact, during the time when "When I Found You" was enjoying its biggest success on the Australian airwaves, Defendant Sheeran was touring extensively in Australia.  Defendant Sheeran has also released numerous ARIA chart topping songs and recently took an extended hiatus from performing during which, upon information and belief, he spent substantial time in Australia, and has performed tours in the country numerous times over the years.  There are a plethora of additional ways in which the Defendant Writers could have heard "When I Found You", not the least of which being the popularity of the Song on Spotify and YouTube.

53.     Turning back to Mr. Holland, however, on the night of December 21, 2017, Ms. Rae sent an email, clearly not actually written by her, but obviously based on pressure imposed by Mr. Holland, in which her tone and willingness to participate in the lawsuit changed dramatically.  She now stated she would "_not_ participate in any legal action of any kind against the song's recording artists . . . the owner of the recorded track master . . . or their record company, Sony Music Entertainment" (although she would be willing to make a claim against the publishers and writers).  Ms. Rae went on to state she would "not take this action on moral grounds" and that she would not "be part of any action that defames, courses (sic) distress, causes embarrassment or damages relationships between people and organisations (sic) who have done nothing wrong."  Tellingly, Ms. Rae went on to write that "my partner Tim works for Sony Music Entertainment and has overseen the marketing for 'The Rest of our Life' in Australia. ***He works directly with the Tim and Faith label team in Nashville. Taking such action would compromise both his position and that of the people he reports to and this is not something I'm prepared to do***."  Ms. Rae stated that Mr. Holland had communicated her position to Sony Music, but, as noted, she was still open to pursuing actions for a portion of the writer's royalties from the Infringing Song.

54.     Clearly, this email was drafted by Mr. Holland, or with his participation.  The admission that Mr. Holland worked with Sony Music in Nashville, and with Defendant's McGraw and Hill, further underscores the likelihood that he was involved with providing access, and that all of the Defendants were involved in the copying of the Song.

55.     The email goes on to say "I have also been advised that in the event that we *did* take legal action against them, a ruling would be made to redirect the claim to the songwriters/publishers and we would have to pay the legal costs of the above parties.  I am not prepared to do that."  Again, this portion of the email was clearly not written by Ms. Rae, and, of course, is wrong, and was bad advice given to Ms. Rae, presumably by Mr. Holland.  Sony Music and all of the Defendants herein are liable for distributing the Infringing Song and Infringing Sound Recording as a matter of law, since all members of the distribution chain of an infringing work are liable for copyright infringement.  In addition, while not an element of copyright infringement, the knowledge of Mr. Holland and others at Sony Music is imputed to Sony Music, and makes Sony Music and others liable for willful infringement.  Plaintiffs were not scared off by this threat, and bring this action to remedy the willful infringement of the Defendants.

## INFRINGEMENT OF "WHEN I FOUND YOU" BY "THE REST OF OUR LIFE"

56.     As noted, it is clear that liability for copyright infringement does not stop at the door of the Defendant Writers or the Defendant Publishers/Administrators.  Rather, this is an action where a record label is directly liable for willful copyright infringement because of the decision by its agents and employees to ignore the clear and substantial similarities between two works that could not have been independently created.

57.     As stated above, Sony Music was fully aware of the infringing nature of "The Rest Of Our Life" no later than two months before its release and, upon information and belief, knew of the infringement far longer than even that period of time.  Mr. Holland has admitted to playing both works for other employees of Sony Music, which lends further credence to the belief that Sony Music was fully aware of the fact that it was infringing "When I Found You" when it released "The Rest Of Our Life" but did so anyway with no regard for Plaintiffs' rights.

58.     Upon information and belief, the Infringing Song and Infringing Sound Recording have been licensed by the Defendant Publishers/Administrators to New York companies for distribution,  and sold within the United States, including New York and to New York residents, in both digital download and physical form.  Further, the Infringing Song and Sound Recording have been streamed on Spotify nearly 8 million times since its release, many of which, upon information and belief, have been within this Judicial District.   The album containing the Infringing Song/Sound Recording debuted at Number 1 on the Billboard Top Country Album chart and Number 2 on the Billboard 200 chart.  The Infringing Song appeared on the Billboard Hot 100 and debuted, and remains, on the Billboard Hot Country Songs chart.

59.      Plaintiffs' Song has also been exploited by the public performance of the Infringing Song.  One such performance is the music video recorded by Defendants McGraw and Hill, which was released on October 7, 2017.  The video, which features Defendants McGraw and Hill performing the Infringing Song, has already amassed over 9 million views on YouTube with more views accumulating every day.

60.     Defendants McGraw and Hill have also performed the Infringing Song publically on numerous occasions.  For example, on November 8, 2017, Defendants McGraw and Hill performed the Infringing Song live at the Country Music Association Awards, which was

simultaneously broadcast nationally on ABC.  On November 17, 2017, Defendants McGraw and Hill performed the Infringing Song live on the Citi Concert stage at the TODAY show plaza in New York City, New York.  The performance was broadcast nationally as part of the TODAY show.  Upon information and belief, Defendants McGraw and Hill have performed the Infringing Song on other occasions including for live audiences, and pre-recorded and live broadcast.

61.     Defendants McGraw and Hill are continuing their world tour entitled "Soul 2 Soul" which will feature over 25 announced performances in multiple countries, including performances in London, United Kingdom and in New York, USA.  This tour has already sold out 80 shows around the world.  Upon information and belief, Defendants McGraw and Hill will perform the Infringing Song at all of these live performances, generating revenue from Plaintiffs' creative work at additional sold out shows in the coming months.

62.     On information and belief, Defendants' profits on the Infringing Song and Sound Recording well exceed $5 million.

### THE SUBSTANTIAL SIMILARITIES BETWEEN "WHEN I FOUND YOU" AND "THE REST OF OUR LIFE"

63.     As evidenced in the musical transcriptions and analysis below, "When I Found You" and "The Rest Of Our Life" are substantially similar musical works as their similar materials occupy a significant portion of each song, and their similarities comprise distinguishing features in each song.  The similar material first appears in the introductory instrumental section of each song, and contributes to the recognizability of each song.  The similar material encompasses simultaneous melody and chords as well as other features.  The portion of the Song copied in the Infringing Song and Infringing Sound Recording is original to the Song, which is an original work.

22

64.     Specifically, "When I Found You" and "The Rest Of Our Life" are substantially similar in Bars 1-8 of both songs.  These substantial similarities are compositionally vital to the overall mood and musical context of both works.

65.     Bars 1-4 of both songs contain a melody and chord progression which are substantially similar as evidenced by the following comparison transcriptions (the identical scale degrees are indicated with arrows):

### "When I Found You" Introduction, Bars 1-4



### "The Rest Of Our Life" Introduction, Bars 1-4



66.     Significantly, the "core melody" in the introductions of both works shares the same scale degrees 3-2-1-6-6-5.  The similar "core melody" forms the melodic foundation of the verse for "When I Found You" and of much of the melodic material in all of the sections of "The

Rest Of Our Life."  The following transcriptions clearly show the substantial similarities in both songs' "core melodies":

### "When I Found You" Introduction, Bars 1-4



### "The Rest Of Our Life" Introduction, Bars 1-4



67.     All of the transcriptions above clearly show that there is a distinctive structural feature present in both works.  The 4-bar phrase begins with a full upbeat bar containing three consecutive quarter note rhythms.  Not only is this feature present in both works, it is an unusual feature, as an "upbeat" normally occupies only a portion of a bar, often only a single beat immediately preceding the bar where the strong "downbeat" occurs.

68.     In addition, both works contain identical scale degrees in the primary melodic line, (3-2-1-6-6-5), shared scale degrees in the tones within each chord, shared waltz-like rhythms in 3/4 meter: three quarter note upbeats, followed by three dotted half notes (each sustained for the full bar), and shared harmonies (chords) as outlined in the following chart:

**Comparison of Chords, Introductions, Bars 1-4**

| Song | Location by Bar / Chord Name | | | |
|---|---|---|---|---|
| | **Bar 1** | **Bar 2** | **Bar 3** | **Bar 4** |
| **"When I Found You"** | D | G9 | G9 | D |
| **"The Rest Of Our Life"** | D | G9 | G9 | D |

69.     The above similar 4-bar phrase, as shown in the transcriptions and chart, repeats immediately in Bars 5-8 to complete the 8-bar introduction section in both songs (with slight variation in "When I Found You").

70.     This similar material also repeats successively during Verse 1 of "The Rest Of Our Life," in Bars 9-17, and in the parallel locations in its Verses 2 and 3.  In "When I Found You," this shared introductory material returns in Bars 65-68, as well as being echoed in the piano part of the verse sections (minus the quarter note rhythm in each first bar).  This shared material, combining similar creative elements, is a compositional pillar of each song, and a distinctive identifying feature in both.

71.     "When I Found You" and "The Rest Of Our Life" are also substantially similar in the primary vocal melodies of their verse sections.  Both songs' verses refer to the similar "core melody" found in their introduction sections.  For example, the first phrase of each song contains scale degrees 3-2-1, followed by a descending leap (to scale degree 6 in "When I Found You" and to scale degree 5 in "The Rest Of Our Life").  The second phrase contains scale degrees 3-2-1, ending on scale degree 1, in both songs.

72.     Further, the metric placement in both the first and second phrases is substantially similar in that the vocal portion of each 4-bar phrase starts with upbeats in the second half of Beat 3 of the second bar, arriving on scale degree 3 on the downbeat of the third bar, scale

degree 1 is tied from the third to the fourth bar, and the phrase ends on Beat 1 of the fourth bar.

The phrase lengths and durations of silence (rests) in between each phrase are very similar. This

is significant. In music, silences are as important as sound in determining the character of

creative expression. The following transcriptions illustrate the similarities discussed here:

### Verse 1, Phrase 1

#### "When I Found You" (Bars 9-12)



#### "The Rest Of Our Life" (Bars 9-12)

### Verse 1, Phrase 2

#### "When I Found You" (Bars 13-16)



#### "The Rest Of Our Life" (Bars 13-16)

**Verse 1, Phrase 3 ending**



73.     Additionally, the vocal and instrumental accompaniment similarities shown above combine simultaneously in both songs.  The verses of both songs also share distinctive structural elements, including the way in which the vocal and instrumental accompaniment parts overlap within the 4-bar phrase structure.  These similarities can be seen in the following transcriptions:

**Verse 1, Phrase 1 with Piano Accompaniment (Bars 9-12)**



27



**Verse 1, Phrase 1 with Piano Accompaniment (Bars 9-12)**

**"The Rest Of Our Life"**

74.     In addition to appearing in the introduction and verse sections, variations of the "core melody" also appear in the primary vocal melody throughout all sections of "The Rest Of Our Life," permeating the song, including in the chorus and bridge sections.  For example, the repeated lyrical phrase "Oh, I'll be fine" begins with a bar of three quarter notes, similar to the upbeat bar in the introduction sections of both songs (with scale degrees 1-2-3 here), followed by the "core melody" variation 3-2-1-6-1 with the lyric "fine."

75.     The hook vocal phrase in "The Rest Of Our Life" is "I'll stay young for the rest of my life / we'll stay young for the rest of our life."  The lyrics "for the rest of my life" are also found in the final phrase of Verse 3 in "When I Found You," sung to the scale degrees 6-6-3-2-1-2-2-3-4.  In "The Rest Of Our Life," this lyric phrase occurs six times.  It is the closing vocal phrase of the song and is a very significant similarity, as the ending phrase of the song is essential to its impact.

76.     Finally, the works both present substantially similar themes of marriage, the passage of time, aging, and the way that the romantic relationship protects the speaker against

28

vulnerability.  The multiple similar elements combine in such a way that it is implausible that "The Rest Of Our Life" was created independently.

77.     The similarities between the works, especially within their essential identifying features, show certain copying.

## CONTINUED EXPLOITATION OF "WHEN I FOUND YOU" BY "THE REST OF OUR LIFE"

78.     The Infringing Song continues to be reproduced, sold, distributed, publicly performed, licensed, and otherwise exploited on compact discs and albums, and as digital downloads, ringtones and mastertones, and in music videos, all without payment to Plaintiffs.

79.     As discussed above, all Defendants are responsible in some manner for the events described herein and are liable to Plaintiffs for damages available under the Copyright Act. Defendants are involved with the creation, release, reproduction, distribution, exploitation, licensing, and public performance of the Infringing Song, embodied in all forms of media, including videos, digital downloads, records, motion pictures and advertisements, all of which constitute, among other things, the improper preparation of a derivative work and direct, vicarious, and contributory infringement.  As co-infringers, Defendants are jointly and severally liable for all amounts owed.

80.     These acts were willful, knowing, and malicious and perpetrated without regard to Plaintiffs' rights.

## <u>FIRST CAUSE OF ACTION</u>

## DIRECT, CONTRIBUTORY, AND VICARIOUS COPYRIGHT INFRINGEMENT OF "WHEN I FOUND YOU" BY "THE REST OF OUR LIFE"

81.     Plaintiffs repeat and re-allege each of the foregoing paragraphs as though fully set forth herein.

82.     Plaintiffs are the owners of the United States copyright of sixty-six and sixth tenths percent (66.6%) in rights, titles, and interest in the musical composition "When I Found You," which is registered with the United States Copyright Office as PA002068570.

83.     Plaintiffs are the owners of the Australian copyright of sixty-six and six tenths percent (66.6%) in rights, titles, and interest in the musical composition "When I Found You", Identifier Number GW47497796 for registration of the musical composition "When I Found You" with APRA AMCOS.

84.     Defendant Writers had access to "When I Found You" (as discussed above). Furthermore, "The Rest Of Our Life" and "When I Found You" are substantially similar (as also discussed above). Defendants copied elements that were original to the Song in the Infringing Song.

85.     Defendants' unauthorized reproduction, distribution, public performance, display, and creation of a derivative work, "The Rest Of Our Life," infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

86.     Defendants did not seek or receive permission to copy or interpolate any portion of "When I Found You" into "The Rest Of Our Life."

87.     Defendants' conduct has at all times been knowing, willful, and with complete disregard to Plaintiffs' rights.

88.     As a proximate cause of Defendants' wrongful conduct, Plaintiffs have been irreparably harmed.

89.     "The Rest Of Our Life" copies quantitatively and qualitatively distinct, important, and recognizable portions of "When I Found You".

90.     From the date of the creation of the infringing composition and sound recording

30

"The Rest Of Our Life," all Defendants have infringed Plaintiffs' copyright interest in "When I Found You" including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing "The Rest Of Our Life" at radio, live concerts, personal appearances, and on video, television, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the records and digital downloads through the execution of licenses, and/or actually selling, manufacturing, and/or distributing "The Rest Of Our Life" through various sources; (c) by substantially copying and the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "When I Found You" in and as part of "The Rest Of Our Life," packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

91.     Plaintiffs have received no copyright ownership interest in, or revenues for the exploitation of, "The Rest Of Our Life" or any of the works associated with "The Rest Of Our Life."

92.     Defendants have reproduced and/or distributed and continue to manufacture, reproduce, and distribute large numbers of copies of "The Rest Of Our Life," which violate Plaintiffs' copyrights and are at issue in this lawsuit.  Defendants have not only marketed and exploited the Infringing Song, but have granted, or caused to be granted to various parties, licenses to reproduce, sample, and/or distribute the songs that are in violation of Plaintiffs' copyrights.

93.     With knowledge of the infringement, Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found to be contributorily liable.

94.     Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

95.     The infringement is continuing as the Infringing Song continues to be sold and licensed for sale, downloads, ringtones, mastertones, and other exploitations by Defendants, or their agents.

96.     As a direct and proximate result of the conduct of Defendants, Plaintiffs have suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.  Under applicable law, Defendants are jointly and severally liable for Plaintiffs' actual damages.

97.     Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to damages, including the substantial profits of Defendants, as will be proven at trial.  Furthermore, because Defendants are practical partners of each other, they are jointly and severally liable for each other's profits.

98.     Plaintiffs are entitled to Defendants' profits relating to foreign sales of copies of the Infringing Song that were manufactured, distributed, or otherwise infringed domestically.

99.     In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum amount of statutory damages for each act of willful copyright infringement.

100.    Plaintiffs are further entitled to a running royalty on all future exploitations of "The Rest Of Our Life."

101.    Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

102.    Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in monetary terms.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of "The Rest Of Our Life," including a continuing royalty following judgment in an amount to be determined.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    A declaration that Defendants have willfully infringed Plaintiffs' copyrighted works in violation of the Copyright Act;

B.    A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

C.    A permanent injunction requiring Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any Plaintiffs' rights protected by the Copyright Act;

D.    If the Court determines a permanent injunction is not the appropriate remedy for the continued infringement of Plaintiffs' rights under the Copyright Act, then pursuant to precedent, be compensated by a running royalty paid on all exploitations of "The Rest Of Our

Life" commencing from the date of judgment and for all amounts not taken into consideration in the judgment;

E.     An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of Defendants as will be proven at trial, which, on information and belief, are believed to exceed $5 million,  including a finding that Defendants are "practical partners" of each other and jointly and severally liable for the profits of each other, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c) for each act of willful infringement;

F.     An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

G.     For pre-judgment and post-judgment interest according to law, as applicable; and

H.     For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiffs respectfully demand a trial by jury.

Dated: January 10, 2018

By: /s/ Richard S. Busch_____
Richard S. Busch (SB 5613)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
Telephone:     (615) 726-5422
Facsimile:      (615) 726-5417
rbusch@kingballow.com

*Attorneys for Plaintiffs*